IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICKY COLE, #N-12383,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )    **CASE NO. 11-cv-725-JPG** |
| | ) |
| **DR. FAHIM, DR. SHICKER, and** | ) |
| **DR. LARSON,** | ) |
| | ) |
|       **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Ricky Cole, an inmate at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a life sentence for murder. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff's complaint names Dr. Fahim (Medical Director at Menard), Dr. Shicker (IDOC Medical Director), and Dr. Larson (Regional Medical Director for Wexford), whom Plaintiff claims each violated his constitutional rights.

In May, 2010, Plaintiff alleges that he began complaining about an inguinal hernia[1] that

---

[1] "An inguinal hernia occurs when tissue pushes through a weak spot in the groin muscle. This causes a bulge in the groin or scrotum." *Inguinal Hernia Symptoms, Causes, Repair/Surgery*, WebMD (last visited June 18, 2012), http://www.webmd.com/digestive-disorders/tc/inguinal-hernia-topic-overview (last visited June 18, 2012).

was bulging out in his groin and causing pain in his "lower body area" (Doc. 1, pp. 4-5). Sometime after that, Plaintiff was examined by Dr. Pratt, Dr. Magda, and Dr. Fuentez (who are not named as Defendants), each of whom denied Plaintiff any pain medication or surgical remedies (Doc. 1, p. 4). On June 21, 2010, Plaintiff wrote to Defendant Fahim saying that "[t]he pain in [his] groin area has become . . . severe" (Doc. 1, p. 15). In this letter, Plaintiff also requested authorization to have corrective surgery for his hernia (Doc. 1, p. 15).

On July 27, 2010, Plaintiff wrote to Defendant Shicker complaining of non-treatment of his hernia and requesting his assistance with obtaining surgery (Doc. 1, p. 11). Defendant Shicker responded on August 4, 2010, recommending Plaintiff use the grievance process to remedy his situation (Doc. 1, p. 11). In this letter, Defendant Shicker also informed Plaintiff that "not all hernias need surgical repair" (Doc. 1, p. 11). Between May 7, 2010, and August, 2010, Plaintiff filed three grievances with Counselor Reardon and Grievance Officer Cowan, none of which were returned or addressed (Doc. 1, pp. 16-18). On December 15, 2010, Plaintiff wrote to Michael Randle (Director of IDOC) inquiring about an appeal of a grievance filed July 28, 2010 (Doc. 1, p. 19).

On February 13, 2011, Plaintiff was admitted to the local hospital in Chester, Illinois, apparently due to intestinal inflammation and urinary-tract blockage (Doc. 1, p. 14). However, he was sent back to the prison hospital the same day (Doc. 1, p. 14). The next day, Plaintiff was seen by Defendant Fahim who told Plaintiff there was "nothing he could do" (Doc. 1, p. 14). Defendant Fahim prescribed Plaintiff "a six-month supply of Ibuprofen 400 mg tabs," gave Plaintiff a "scrotum-supporter," and told Plaintiff, "'take it easy and stay off [your] feet'" (Doc. 1, pp. 5, 14). On February 18, 2011, Plaintiff filed a grievance requesting an "upper G.I. exam

and surgery on [his] hernia" (Doc. 1, p. 13).  This grievance was reviewed and denied on appeal on June 1, 2011 (Doc. 1, p. 9).

Since his initial screening, Plaintiff claims to have written to Defendant Larson "concerning the difficulties from [his] hernia"; however, Plaintiff has not discussed the content of Defendant Larson's response in his complaint (Doc. 1, p. 5).  As of July 7, 2011, Plaintiff claims to be suffering from continuous pain that "stops only when [he's] lying on [his] bed" (Doc. 1, p. 5).  Plaintiff further alleges that he can no longer exercise, and at times cannot walk because of the pain or must walk in a stooped position (Doc. 1, p. 5).  In addition, he is unable to defend himself from possible assault, or stand or sit for extended periods of time because of the hernia (Doc. 1, p. 5).

Plaintiff requests a jury trial, an injunction for "a complete and proper exam of his upper and lower G.I., with corrective surgery," and compensatory damages for pain and suffering (Doc. 1, p. 6).

**Discussion**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106.  *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical

>needs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999).  Deliberate indifference involves a two-part test.  The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).  However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

>[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering").  Further, a delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")).

Finally, the Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff alleges that Defendants Fahim, Shicker, and Larson have all been informed of his medical condition and have repeatedly denied or ignored Plaintiff's requests for corrective surgery. Plaintiff describes what could plausibly be termed a "serious medical need," as he claims his hernia has almost completely immobilized him - preventing him from engaging in any form of exercise and interfering with his ability to walk. In addition, Plaintiff states that he has experienced severe and debilitating pain that has not been relieved over at least a five-month period. While Defendant Fahim has prescribed some treatment, Plaintiff alleges that these measures have been ineffective in treating his hernia. Thus, Defendant Fahim's denial of corrective surgery could be unnecessarily prolonging Plaintiff's pain. Although Plaintiff's complaint suggests that not all hernias require corrective surgery, Plaintiff also suggests that Defendants Fahim, Shicker, and Larson were all aware that Defendant Fahim's February 14, 2011, treatment plan had been largely unsuccessful in abating Plaintiff's condition.

However, in regards to Defendants Shicker and Larson, their responsibilities do not encompass the individual treatment of Plaintiff. Plaintiff seems to think that any prison or medical employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees

are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook recently stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff has not alleged that Defendant Shicker or Defendant Larson were involved in the diagnosis or treatment of his hernia. Nor does he indicate that these Defendants had any role in determining what treatment Defendant Fahim was authorized to provide to Plaintiff. While Plaintiff alleges that he repeatedly put Defendants Shicker and Larson on notice of his chronic pain and serious medical condition, such notice is insufficient to create liability for Defendant Fahim's possible deliberate indifference. Accordingly, Defendants Shicker and Larson shall be dismissed from this action without prejudice.

However, according to the complaint, Defendant Fahim is responsible for Plaintiff's medical treatment and has allegedly persisted in a treatment plan that has failed to relieve

Plaintiff's ongoing pain or correct his hernia. Thus, Plaintiff has stated a plausible claim under the Eighth Amendment that should receive further review.

**Disposition**

    **IT IS HEREBY ORDERED** that Defendants **SHICKER** and **LARSON** are **DISMISSED** from this action without prejudice.

    **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **FAHIM**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

    **IT IS FURTHER ORDERED** that, if the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

    **IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other

document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   June 20, 2012**

*s/J. Phil Gilbert*
**United States District Judge**